And our next and final case is Nadine Gazzola v. Paul v. Kathleen Gazzola. And here I thought we had the most interesting case. Whenever you're ready. Thank you. My name is Paloma Kapana. I represent the plaintiff appellants in Gazzola v. Hochul. Nadine and Seth Gazzola are here today in the courtroom with us. Thank you for the opportunity. What a morning. I think the two words I would like as my theme for oral arguments are concrete and stable. Myself, I am so pleased that we are here on federal firearms compliance issues, which do have such a stable and logical progression since the 1968 Gun Control Act. So hopefully we will not be suffering from quite as many hypotheticals, if you will, Judge Lynch. My problem is that we have been in a state of crisis since December 5th. And I seem not to be getting across to the court the urgency of the circumstances in which my clients and any other FFL 01 or 02 finds themselves here in the state of New York. So I make myself a list of dates. First, we had to deal with the crisis of the annual certification. We were talking earlier about communists and could a sign be put up about communists. And of course, my anchor cases for that were what? Back to the communist era and the certification. Are you a member of the Communist Party or not? In this case, have you complied with all of New York's new mandates or not? Then we moved on to the monthly inventory reconciliation report, which no one even knows what to do with. Then the semi-annual book of acquisition and disposition. Why do you not know how to do an inventory reconciliation? You have a certain number of guns that you have. Oh, yes. Some got sold. Some new ones got bought. You add them up. You count the ones you've gotten. You see what it is. No, but the statute does not say what to do with it. Are we supposed to hold it until the New York State Police arrive? Are we supposed to be mailing it in? Well, if it doesn't say you're supposed to mail it in, then I guess you don't have to mail it in. But what if the officer shows up with a different interpretation? We have not only that, we have also... Generally speaking, like income tax returns, I have to file. Sure. There's a law that says I have to file them every year. Yes. There are other record keeping requirements on many businesses that say you have to keep certain records. Yes. So you keep them. It doesn't say you have to mail them in, so you don't have any place to mail them to. I'm not sure I understand what is the ambiguity there. Look to the next one that is due, the first semiannual acquisition and disposition book photocopies that are to be mailed in in April. So it's my next crisis with the plaintiffs. We find ourselves once again at a point where we are going to have to be invoking our Fifth Amendment rights. Again, I'm not entirely... I understand there will be people who are violating certain rules, and that may create a Fifth Amendment problem. But I thought the principal argument that was made below and was made here was that no one can say honestly that they are in compliance with federal and state laws because there are conflicts between federal and state laws. I thought that was the argument. Am I missing something there? Yeah. We are in compliance with the federal laws, absolutely. We are in compliance with the New York state laws that predate the new laws that went into effect on December 5th. Where we are not in compliance is with the Group A laws, several where we intentionally are saying there is a conflict that cannot be resolved. In other words, that's the issue that is before us, is whether there really is an inconsistency. And as to the general state of crisis, I mean, this was a preliminary injunction hearing, right? There was a hearing. There was no hearing in our case. We simply had oral arguments. There was no testimony taken at all. It was foreclosed. But there are affidavits and so on, right? Yes, that is correct. There are factual conclusions that the district court drew. The district court dismissed us on a text order in less than 24 hours of the oral arguments. And then some days later, after we had already submitted our first emergency motion to this court, turned in a written findings. So when we did the emergency motion, we said it was not required. Now we're talking about the merits. Now we have a set of findings by the district court. And so the question, as I understood the issue here, the basic issue here, and tell me if I'm just totally misconceiving this. You argue, and this part I think has to be more or less right, I can't speak for anybody else on the panel, that if there were burdens that were placed on gun dealers that made it difficult, enormously difficult, put a substantial burden on people's ability to acquire firearms, that would violate the Second Amendment. That makes a lot of sense to me anyway. But then we have a district court that said no such thing. There's no showing that these folks are going to go out of business. And there's no showing that even if these particular plaintiffs did go out of business, that it would still be any, you know, nobody's entitled to have a gun shop on every corner so they make it very convenient for them to buy guns. So, you know, you have to show, if you're going to rely on that argument, that what the regulation of gun dealers, which the Supreme Court has consistently said is something that's okay in general, generally speaking, is being conducted in such a way that it's going to make it very hard for people who want to buy guns to get them. And I thought the district court said that showing hasn't been made. So is that really not the issue, whether the district court clearly erred in finding that there is not that level of burden? And she clearly erred because she really jumbled the issues. What I've tried to get across in our papers is that the laws we complain of fall into three separate categories, Group A, B, and C, and a separate standard will apply to each. So when we're looking at a direct conflict to federal firearms compliance law, such as there shall not be a gun registry, dealers who create certain records at their business premises must maintain them there full stop, we're looking specifically at preemption question. Well, tell me exactly, give me your best shot as to here's what the federal law says and what the state law says is inconsistent with that. Sure. Congress three times over has stated a very clear intention that there shall never be at any point a gun owner's registry. The state of New York has admitted that that is what they want to do with the records they wish to take from my clients. When we go through federal firearms compliance law... Tell me exactly where it says that in the law. What is the law that says they are creating a gun register? There are numerous sites, Your Honor, and I laid them out consecutively. Just give me one. Just give me one. I want to be able to look at them. Tell me what is the best one that says they are creating a gun registry, a registry of gun owners. The state of New York admission to that point is contained in the papers that are currently pending before the United States Supreme Court. I did put that note in both my brief and in my reply. I can pull that separately if you'd like. If we got it in the... Yes, it is there. These statutes... Don't they sort of have that? I mean, this is what's sort of peculiar. If they're giving licenses to everybody, then they have a list of all the people they've given a license to. But a handgun license list housed by the New York State Police is not a gun owner's registry. A gun owner's registry is every firearm bought and sold. A permit, for example, does not even require a person to own a handgun. I see. Yes. And so when we go from Congress to the United States Attorney General, to the ATF and the FBI, then to the FFL, they function essentially as agents for the federal government in the transaction. They are collecting specific information from the consumer of firearms. They are the only person with the connection of the person to the specific arm. But how does that make you subject to conflicting obligations? That may be something that New York State shouldn't do. New York State shouldn't do it. Maybe a gun owner can complain about that. Why is it a problem for you? Because my clients are the dealers who would be subject to federal felonies for disclosing their records to the New York State Police. There's something that says that your records cannot be shown to the New York Police? That they may not be given to other than their premises. Through the point even that the business itself closes, at which point, and I've laid this out in my papers, there is a specific ATF on site that happens for those records to go into permanent hold with the ATF, then under their own strict regulations, where it may not ever, in any circumstances, become a gun owner's registry. That is correct. In order for it to become a gun owner's registry, you would have to send it into the state, correct? That is correct. But you said earlier that there's no law that requires you to do that. There is now. Oh, there is now, yes. That is why we're here. I thought you said that the gun dealers are in a pickle because they don't know whether they have to send it in or not. Whichever they do, they may find themselves in violation of the law. Judge Jacobs, thank you for that clarification question. You will find that there are several provisions of the statute at New York General Business Law Section 875. We have at least eight different new record-keeping requirements. Some, such as the one for April, that I'm most concerned we might get a ruling on soon, would require us to photocopy and mail them to the New York State Police. We know that. We do not intend to do that. We will be invoking Fifth Amendment rights again to do that. What I referenced, however, was the monthly inventory reconciliation, which that one specifically says. Can you just give me the site to the federal statute that says you would be violating federal law if you do exactly what you described? I do. While Mr. Beasley is speaking, if you wish, I can look that up in my papers. What I've done in the papers is I do have it as Group A, and I walk you through each one of the record-keeping requirements. And I specifically reference not only the 18 U.S.C. provisions, but also the 27 CFR and also 28 CFR provisions that could be charged against my clients in the event that they violate federal law. Absolutely. Or we would not be here. We would not be here. In a sense, it boils down to a choice between going to federal prison, if you will, or state prison. Our choice is that we are going to follow the federal law first. We consider that to be the apex. We consider that Congress has been very clear in three statutes. And now, most recently, the bipartisan bill from June of 2022 under President Biden, again, the reaffirmation there should not be a gun owner's registry. So that speaks to our Group A laws. As to our Group B laws, then we have a couple provisions from the CCIA. So we're a little bit back into that question of historic context. There has never before, either in New York or in the United States, been a license required for a long gun. Now there is one. And when the state, my learned colleague, Mr. Kiernan, provided some statutes that were historic, those four laws actually prove our point that men who were showing up for their militia duty brought the rifles they owned and possessed. They brought the ammunition that they owned and possessed. There was no license that was required either for the long gun or for the ammunition. Which rolls us rather nicely into my slightly esoteric point that I'm hoping, Judge Jacobs, you might in particular muse around with. The notion that there is still one word left in our precious Bill of Rights to interpret. And that is the word to keep. It says to keep and bear arms. And yet, to bear really has had pole position. I mean, look, even this morning, everybody left. Right? Here I am to talk about to keep, which I think is the most interesting historic minute we could have in our generation. Let me just try to understand the argument. Is it your position that there's some special license required of a gun dealer to keep the very guns that he or she is selling? Is that the point? Or is this a separate argument that some of your clients would have whether they were in the business of selling guns or not? We believe that to keep, of to keep and bear arms, has an independent value that has yet to be realized. So I cited to you in my reply papers a decision from 1871 where Andrews versus State looked like two judges from Tennessee maybe kind of came close to seeing that the words to keep have an independent value. And one memorandum from 2004 from the Department of Justice to President Bush where they gave two pages on the words to keep. I'm sorry. I thought it was a simple question. Are you saying that this issue about keeping arms, which after all I thought was what Heller was about in the first place. So that's why we're getting to bear because now we have the carry issues, which are different. I just ask, are your clients saying they're objecting to something they want to do as private citizens that any of these other folks could have also challenged if they chose and if they had an interest in it? Or are you saying there's something that the keep obligation is special for gun dealers? Which is it? I mean, I'm just ignorant. I want to know what you're arguing. The argument is it is one in the same. That arms is the only object in the Bill of Rights. In order to bear arms, you are owning and possessing them. You are doing that by going to the dealer. The dealer is inextricably linked. If New York is to prevail, and as I say, let's just go to my worst case scenario, gun dealers start shutting down all across the state of New York. It will not matter what you have already talked about this morning. There will be no firearm to bear. The New York citizen, as a practical matter, even if they have a concealed carry permit, will have nowhere to go to purchase that firearm. Okay, but that gets back to what I was prepared to concede at the beginning. And again, maybe I won't be after I finally study it and after I talk to my colleagues and they have a different view. But my inclination is to say, okay, that's an argument. But factually, the district court said you haven't made the showing that that is what is likely. So that's the issue. So what you're saying is what you're saying about the right to keep is not about either. My client wants to buy a long gun, and now he needs a license, and that's unconstitutional. And that's just something he wants separate from his being a gun dealer. Nor is it that somehow the licensing requirements prevents him from having inventory. But we're just back to if the gun dealers have to close down, then everybody's Second Amendment rights are violated. That's the basic crux of what your argument is. Yes, I am not here with a property argument or a seizure of property argument. I am here the way that we've rolled it across. Okay, so let's get back to what is it that makes the district court's finding clearly erroneous when the district court says that you have not established that all of you guys, all the people that you represent are going out of business, let alone that all the gun dealers around New York are all going out of business. How did you make that show? Yes. What's the evidence? By a new standard, constitutional regulatory overburden. So as I've laid out in our papers, and most particularly in the reply that was just submitted, if we recognize to keep as the new kid on the block the final word to be interpreted and we give it a separate independent value, then this court would need to have some way to know when is that being violated. We are proposing constitutional regulatory overburden, that there comes a point where the state is targeting clearly an industry. New York General Business Law Section 875 only applies to dealers of firearms where the burdens heaped upon them are impossible for the whole list of reasons that I set out, technologically infeasible, financially implausible. Look at the totals that we've done on our specific statute section by statute section analysis. You can't do it. It is designed to drive an industry out of business. And so when you come back to a comment such as, well, what if we just have Walmarts? Well, Walmart only has 47 FFL licenses total in the state, and as of 2019 their public policy is they don't sell handguns. That brings us down to runnings, also proposed by the state of New York. Ten FFL licenses total for the state of New York. Where does that leave us? You were talking earlier, what are historic analogs? How do we know when a case is close enough? I have said, perhaps to the point of boring in these different proceedings, you're in steel workers versus U.S. You're in those wartime necessary industry cases where we have a pocket of 14 cases total that have essentially gone to sleep because they haven't been of use. Now they're of use again. Because right here, right now, what you have is a state who is getting tricky. We've got this wonderful whole women's health case out of the United States Supreme Court, and not only the majority opinion but the concurring and the dissents nailed it as to what the state of New York is doing. They're not coming in with an outright ban. They know they can't get away with that, even here at the Second Circuit. Instead, they're coming in with a scheme designed to evade judicial review. Justice Comey Barrett nails it with that language. Justice Roberts saying we may have to work harder as judges because it is not so obvious the end point to which these laws are directed. So we've put on essentially our little see-through glasses to look at this law and say, I come to you today with 31 separate statutes and statutory sections. I am the heavy lift. I was glad when you rearranged us on Friday and I became case number five. I know I'm asking you to do the most, but it is to keep, and it is my clients with their unique standing beyond the plaintiffs of Heller, McDonald, and Bruin where you can be first. You can be the judges who are the first to interpret the last word of the Bill of Rights and give meaning to the Second Amendment that will last for generations. Thank you. May it please the court, my name is Beasley Kiernan. I'll be arguing for the state defendants in this case. The district court here correctly denied a preliminary injunction. This court should affirm. As you've heard, plaintiffs principally challenge safety and record-keeping requirements imposed on firearm dealers. Plaintiffs fail to show that these laws are preempted by federal law or even implicate the Second Amendment, let alone violate the Second Amendment. And I'll just note that plaintiffs also challenge three laws in their capacity as individual owners of firearms, the training requirement for a concealed carry license, the licensing requirement for the purchase of a semi-automatic rifle, and the background check requirement for buying ammunition. The district court correctly held that plaintiffs lack standing to challenge these laws and they're consistent with the nation's historical tradition of firearm regulation in any event because they're designed to ensure that those possessing arms are, in fact, law-abiding, responsible citizens. But turning first to the safety and record-keeping requirements, insofar as plaintiffs are attempting to assert a Second Amendment right to sell guns, the district court correctly held that there is no such right. This is consistent with the Ninth Circuit's decision in Teixeira, which held that there is no independent freestanding right to sell firearms under the Second Amendment. And the Ninth Circuit, in that case, did an exhaustive analysis of both the text and the history of the Second Amendment. Insofar as plaintiffs are attempting to assert a Second Amendment claim on behalf of their customers, as the district court explained,  in the state of New York. As you've heard, plaintiffs' theory is that the laws are so burdensome that gun stores across the state will close. There's no support for this in the record. Even in plaintiffs' reply brief, they acknowledge that there are still over 1,700 gun stores in the state of New York as of February 2023. Nor is there any evidence that any particular New Yorker is unable to purchase guns because of these safety and record-keeping requirements. Do you agree that if they could make that factual showing, they would be able to, they would have standing to raise that issue? In other words, why isn't this just like when there was a constitutional right to abortion, that abortion clinics would come in and say these various regulations are designed to make it impossible for us to do business. And those were, some of them won, some of them lost, but they were all considered on the merits all the way up to the Supreme Court. So, I mean, are you contesting that they shouldn't even be here, or are you saying basically that they just haven't made that showing and so we don't have to worry about that? That's right. They haven't made that showing. Whether New York enacted such a restrictive law that really did prevent New Yorkers from purchasing guns, whether in that case these particular firearm dealers would have standing to challenge those laws, it's a difficult question. The Ninth Circuit said yes. In that kind of situation, firearm dealers would have derivative standing. Well, that was certainly the case when you had one left abortion clinic in the state and there were regulations that were not particularly relevant to safety that seemed to be aimed at closing them down. Then that made out a claim. You're saying that's not where we are here. Right, that's not where we are here exactly, Your Honor. And the district court ruled this way on the merits after reviewing the evidence in the record and finding that it just didn't support plaintiff's claim. Turning to plaintiff's individual claims, the district court correctly held that plaintiffs lacked standing. First, plaintiffs are not injured by the training requirement. That applies only to those who are seeking a concealed carry license. Plaintiffs already have a concealed carry license. Under penal law section 400.00, those licenses, quote, shall be in force and in effect until revoked. Plaintiffs need only recertify their licenses every three years, and that does not entail any training requirement. Plaintiffs have also failed to show any injury in fact traceable to the semiautomatic rifle licensing requirement, which applies only to the purchase or transfer of possession of a semiautomatic rifle. Only one plaintiff, Martello, states that he even desires to purchase a semiautomatic rifle. He does not describe any concrete plan to do so. Certainly hasn't applied for a license. So he has not shown any actual or imminent injury. Even if there were some potential injury, it would not be traceable to the state defendants. Martello's claim is that his county is not issuing semiautomatic rifle licenses at this time. There's no evidence for that in the record, and we're not aware of any widespread refusal to issue licenses at the county level. But even if it were true, it would just mean that Martello's hypothetical injury would be traceable to the county, not to the state. For similar reasons, plaintiffs have failed to show any injury in fact traceable to the ammunition background check requirement. They haven't shown that they will face any obstacles in purchasing ammunition once those background check requirements come into effect later this year. On the merits, all these laws are consistent with the nation's historical tradition of firearm regulation. And your honors need look no further than footnote nine of Bruin, which states that nothing in this court's analysis should be interpreted to suggest the unconstitutionality of shall-issue licensing regimes, such as the licensing regime for the purchase of semiautomatic rifles. Bruin goes on to specifically cite background checks in firearm safety courses as examples of components of a lawful shall-issue licensing regime. Justice Kavanaugh's concurrence makes the same point. He states, shall-issue licensing regimes are constitutionally permissible, and they may require a licensed applicant to undergo a background check and training in firearms handling. And the reason these laws are constitutional is twofold. First, they do not necessarily prevent any responsible law-abiding citizen from keeping and bearing arms. Indeed, plaintiffs have not shown any infringement of their own Second Amendment rights here. That's why they lack standing. It also means they fail to show that these laws implicate their Second Amendment rights. And the second reason is that these laws are consistent with laws, a long-standing tradition of laws designed to ensure that only law-abiding, responsible citizens possess arms in this country, preventing dangerous people from bearing arms, essentially. And I don't think any court has disputed that a state can take certain reasonable prophylactic measures to ensure that dangerous people do not possess and bear arms. Unless there are any further questions, I'll rest on my briefs. Thank you very much. Thank you. So what might actually assist the court, if you turn in the appendix, you'll find the one-page chart that brings our case down to the A, B, and C, so that you can see how these laws both operate and then the theory of law behind them that we are arguing. What is in the record, also right at the same point, is the six-page chart. So when my learned colleague talks about these safety rules and regulations and you and I, Judge Lynch, get into a discussion of what is vague, is part of what we've been dealing with is that the law directed the agencies to promulgate rules and regulations, to promulgate the curriculum for the statewide firearms training, to issue different kinds of documents, of which they haven't. They have not. So when my colleague stands up here and says, well, nobody's having a problem getting guns, that is not true. Because my clients, in their declarations and with full standing, can say, as a dealer, it is illegal for me to sell a semi-automatic rifle to a customer who does not have a stand-alone semi-automatic rifle permit. You go to the chart and you see, why is that? Because the New York State Police have failed to issue what the format is for this permit. So no county clerk in any county is capable of issuing the semi-automatic rifle permit. My clients then pivot to the customer side of the counter and say, we can't buy one. And the state cannot force my clients to become ignorant, to walk into a colleague's dealership, for example, and say, gee, Judge Lee, would you mind selling me a semi-automatic rifle? And pretend like they don't know that the law is it would be a felony for Judge Lee to sell us a semi-automatic rifle without that freestanding license. This is what we mean about the scheme that New York State is perpetuating here. There is not a single person in the state of New York who can get the training required as of September 1st for a permit because the state police has failed to issue the standardized curriculum. And my colleague is incorrect as to the law. Section 400 of the penal law does not in any way distinguish between renew and recertify. It is not defined there. And as I set out in my papers, exactly how many times each word is used. The word renew, 39 times. If my colleague's interpretation is correct, then there's nobody who can actually renew their permit. They have to go on a fresh application every single time, which clearly is not as what is intended here by the law. So we are at a total standstill. And what is happening on the ground is a combination of both ignorance and turning away. Dealers who are actually conducting sales that they know or should know are illegal. Customers who through public education, not undertaken by the New York State police, but frankly by the proliferation of cases and radio interviews I've been doing and so forth, are becoming aware that the county is issuing, for example, an endorsement onto a concealed carry permit. A little stamp that they're adding to your concealed carry permit. They are saying, this is sufficient, go forward, buy guns. But then the New York State police website recently is saying, that's not correct. Plaintiffs in Gazzola v. Hogel, they do not use those words, I only wish they did, but that our theory is correct. You need a freestanding license. So what is happening on the ground right now in New York is a total collision. The black letter of the law versus the papers of my colleague versus the New York State police website. It is not a situation that we have experienced in New York. It is not a question of was the Sullivan Act taking care of it? No. What was taking care of it was this Bible. The white book. What I live by every day doing federal firearms compliance law. Which states with clarity what is to be done, on what date, with who. We understand how the Second Amendment has worked. Without judges, without courts, without precedent. Until this governor last summer passed these laws directed at my clients only. Only the dealers. That white book is also aimed only at the dealers, right? Anyone who has a federal firearms license. So also manufacturers, importers, exporters. So again, the same sort of thing here. So you're saying they haven't issued their white book yet? No, far, far from what we have here. Congress since 1968 has very carefully and with three major enactments. Gone through and culled through and organically derived the system that you see today that we use. New York State, in my reply, I walk you through it. Congress has already repealed as being unconstitutional from the original 1968 Gun Control Act. And taken that out of the garbage can of Constitution and passed it. And they are claiming these are new laws. They are not. And I cite you chapter and verse through just three of those examples in my reply papers. Where two of the original pieces from the Gun Control Act now show up in New York State law. And one ATF regulation that was proposed but not adopted because Congress interceded now becomes part of the new law that we challenge. We are the only statute that has not been adopted by any other state since last summer. The CCIA in sensitive places is a bit like chicken pox. Right? We have cases going on in at least seven different states with very similar laws. New York general business law section 875 is alone. There's not even any amicus briefs in this case. That's why I pointed you to and quoted from an interview done where the architect who worked with the governor, per her own admissions at a press conference, says to the Wall Street Journal, whatever is left after they get done in the court. This is not about public safety. This is absolutely a frontal assault on the Second Amendment. Cleverly done. But we dug to the bottom to even interpret for you what were the origins of these unconstitutional laws. I'm the sweeper. So unless you have more questions, I guess I would say thank you on behalf of all plaintiffs. I've spoken with the other councils, and we do all appreciate this historic opportunity to be with you this morning. Yes, thank you. And thank you. Thank you. Excuse me. Who are you today? So that's the last case on our calendar. So I believe we're ready to adjourn now.